Your Honors, Mike Hensley on behalf of Appellants Milan Institute and Mr. Yasuda. I think the briefing has been pretty extensive here and I think I want to go to the key issue which I think is prejudice in this case. And the key legal error that occurred in the court below was how it treated the partial motion to dismiss. A motion to dismiss was not brought in all grounds on this case. And the Ninth Circuit in Richards is held in a situation where a motion to dismiss was granted but without prejudice. That's not a merits determination. It doesn't kill the right to seek arbitration. We kind of have the flip of Richards here to where we had a partial denial. However, there was a second amended complaint because the only part that was granted with leave related to Mr. Yasuda in terms of whether he was a joint employer. The second amended complaint is extant, was answered, has every single theory that was in the first amended complaint subject to the motion to dismiss. And what we have since found, and it negates a concept that we reform shopping, is we moved as soon as the client said I want to go to arbitration. What happens after that? We bring a motion to stay this case on appeal so that our arbitration rights wouldn't be mooted. And the judge finally comes out and tells us, and this is before, way after we had moved for arbitration, hey folks, that partial denial, that was a merits determination. So in this case, I think you've got an interesting theory to where there is inverse prejudice. And my client's appellants are going to be harmed. They're going to be denied their contractually chosen forum that all sides agreed to. And we're going to be in front of a judge that apparently had a predilection against us and has basically made up his mind. Don't go there. But I'm just saying it's something we didn't know. In other words, I could buy an idea of forum shopping, correct? If we had had that and he said, I think I've made a dispositive merits ruling that's going to hurt you, and then we say, oh, we want to go to arbitration, then I could think you could make an argument for forum shopping. And there's an important thing on prejudice because one of the arguments that's made is, well, there's going to be duplication. If you go to an arbitrator and stuff, you're going to lose whatever was basically heard on the motion dismissed. Well, that's not true because the arbitrator obviously can pay whatever weight he wants to to Judge Gutierrez's ruling. Well, it seems to me that you waited 17 months to move for arbitration, and you only moved for arbitration after Judge Gutierrez indicated that he was going to view the students as employees. So I know forum shopping is a harsh term. But I mean, obviously, you seemed to be happy before Judge Gutierrez until he made that ruling. Well, the problem is his ruling actually said, I'm just, as a legal matter, not going to determine. It's going to depend on what the proof is later on. Basically, I think he was setting up a summary judgment because there's multi-factored tests that you look under on the FLSA. And so even that determination wouldn't necessarily mean that this was a merits-binding determination. And it may not have been, but it clearly showed his inclination. And he had had this case for 17 months, and he was entitled to start forming some conclusions about it. 17 months is deceptive, and the cases make it very clear that you look not just at a numerical time limit, but you look at the quality of what happened. And I think it's very clear that there was a good six months in which service was being accomplished, people were coming in pro-activity, more counsel was added to the plaintiff's side. There was not active litigation. Then counsel get together, and this was predecessor counsel on the defense side, in June 2014. When you do that, you're looking at at most basically seven to nine months of delay, depending on when you did it. And it took us about a month to tee up this motion, even after giving notice of an intention to move for arbitration. We gave them notice at a deposition and attempted to get a stay and basically do this motion to arbitrate, see what the ruling was going to be, and they wouldn't agree. But we did ask the judge to stay further efforts. And the prejudice is further shown by the fact that, and Judge Gutierrez admits it, there was no discovery that we took during the period of time. And unlike the case that they cite, it was an Eighth Circuit case, I believe the name of it is Messina. Messina is distinguishable in several ways. One of the ways it's distinguishable and it's important here is Messina said, well, wait a minute, folks. You did all this activity and you had opportunities to inform your opponent and the district judge that you wanted to arbitrate. Here we did that. In fact, right after Mr. Holt and my firm got involved, we put it in our answer. We put it in the 26-F scheduling report. But then you never did anything with it for a while. I mean, it took you quite a while to, yeah, you pled it, but you could have just sought arbitration immediately when you filed your answer. Well, in my view, that would get us to where if you have knowledge and you didn't move right away, then you're dead. And that's not the standard. Really, the emphasis on this case is prejudice. And under your test, which Judge Benn and I respectfully submit, if you brought any motion to dismiss, you'd be dead and you've got to move right away. Whereas I think the case law indicates there's nothing wrong with a motion to dismiss testing some piece of the merits. It might lead to a resolution. You might get a ruling in which arbitration isn't necessary for everyone or it may lead to settlement. So I think it depends on the quality of the motion to dismiss. And clearly, this motion to dismiss was not a merits ruling. And that was the legal error that happened. We have the flip of Richards being involved. And by the way, you might remember at the scheduling conference, there was a dialogue about arbitration. It was actually flagged. And we said, well, we need to get to the client and make sure they have a decision. Judge didn't say, you've gone too far. You brought that motion to dismiss. But he did warn you, though, didn't he? Didn't you say that you thought you made some – somebody made some kind of flip comment that you might very well be better off in Federal court. And he said, well, don't wait too long and warned you not to wait too long. That is the point. And Mr. Holt did say that there. And we did not wait too long. We did not. Within two and a half months, we moved. And nothing else had gone in between that period of time. So we did move as soon as we could and after getting the client's consent. I mean, there's pros and cons you have to discuss with your client. This isn't just a slam dunk decision, right? And, I mean, I know why he did it. And he told me he had a bad experience, not because the result was good. I think the result was good. He had a bad experience in Oakland at a six-week trial. And he just didn't want to do that. Nevertheless, he filed the suit. And it seems to me you have an arbitration clause there. It seems to me to wait 17 months to ask your client whether, you know, we've got an arbitration clause. Do you want to invoke it or do you want to waive it? You wait 17 months to ask your client that question? I'm disadvantaged. I don't know that I want to get into privileged discussions, but I was not initial counsel in the case. No, no, I don't mean you personally. You understand. I'm just saying forget how many counsel there were. If you have a clause like that and you're going to not use the federal courts but you want to go to arbitration and you file a suit in federal court, don't you think that the client should be asked before 17 months have passed whether he wants to invoke the arbitration clause? Well, I will tell you right after we had the scheduling conference, we did have those discussions. Well, I know, after the scheduling conference, but that may be a little bit late if you have a clause that allows you to get out of federal court and go to arbitration. But on this record, which is really undisputed, I just don't see the prejudice. I mean, it all depends on the circumstances, but there really is no prejudice. And let me add this point because I think it's important. This is not a sterile area of the law, okay? In our reply brief at page 7, you'll see multiple decisions coming out under both the FLSA, and we cite the Benjamin case, which these attorneys were involved in in the Northern District of California, which also held under state law that students are not employees. This issue is going to get revisited by Judge Gutierrez. It's going to get revisited by the arbitrator. And that's why there's really no duplication of effort. And in my view, based on this record, and based on the judge coming to a conclusion that it was a merits determination, you have just cause to reversing the motion which denied arbitration rights. Unless there's any questions, I'll reserve a couple minutes. Good morning, Your Honors. May it please the Court, on behalf of the appellees in this matter. A number of courts have held across the country, starting, I believe, with the Eighth Circuit, that playing heads I win, tails you lose is the worst possible reason to delay to move for arbitration sooner than you could have. And that's precisely what happened in this case, as Judge Gutierrez noted. I want to address a couple different manners in which the appellants played heads I win, tails you lose. The first, of course, is the motion to dismiss. And in their briefing, in an argument here today, appellants muddle two different merits-based decisions to be made. The first was the one addressed in the motion to dismiss. And that was whether these students, these cosmetology students, were prevented from being employees as a matter of law by the California Cosmetology Act. And Judge Gutierrez read that and considered a 1944 appellate court decision called Hutchison and concluded it doesn't address that. And Hutchison is no longer good law because of California Supreme Court authority that came after it, specifically Martinez v. Combs. So he said, essentially, these students will go through the same tests that any other inquiry would go through as to whether or not this constitutes employment under the Labor Code. That is a separate issue than the later summary judgment issue of whether, given the evidence, this was an employment relationship. So Judge Gutierrez did not prejudge the merits of the case. What he did was, at the defendant's behest, analyze a critical legal distinction out of the gate and ruled in favor of plaintiffs. The other place, while that takes only a modicum of deductive reasoning to understand why the motion to dismiss was brought prior to the motion to compel arbitration, no deduction is needed when reviewing the transcript of the case management conference. There, Judge Gutierrez asked specifically, well, look, you've dropped this in a couple footnotes. Why haven't you moved to compel arbitration yet? And with surprising and, I suppose, admiral candor, counsel says, look, there's no explicit bilateral arbitration reference and we're concerned that we're going to get a class arbitration clause construction award. And if that were to be the case, we'd rather be in federal court with Rule 23 and the procedural rules of the federal court. So for a second time over, counsel is again making a strategic decision, heads I win, tails you lose, with respect to arbitration. The other point that's, I think, relevant with respect to the case management conference is that when Judge Gutierrez said, you know, look, at some point waiver is going to come into play here, they didn't move immediately. They moved three and a half months after that conference. Three and a half months. That's longer than the Eighth Circuit in the Hooper decision determined was enough to constitute waiver given the motion to dismiss that was filed in that case in total. This is just three and a half months on top of the 14 months that have already gone on. Do you agree you have to show prejudice? I would agree that we have to show prejudice. What is it? So all forms of prejudice that are cited in this context are present here. And I would refer, of course, just within the last month, I think the closest decision from the Eighth Circuit and the Medicina came out. But the prejudice is as follows, and these are the forms of prejudice that are cited in cases upholding waiver. First, the second bite of the apple consideration. Here, there would clearly be a need to relitigate critical issues, particularly the Cosmetology Act that was decided by the district court. And the tradeoff there between arbitration and court was, in court, of course, you can get a citable decision and you can have that decision appealed to the Ninth Circuit Court of Appeals, which is what, in the 26F report, appellants made clear they intended to do. In fact, they wanted to get an interlocutory appeal in. Having made that strategic decision and loss, they now switch. So the first and paramount form of prejudice is the need to relitigate a critical issue as decided. The second has to do with case strategy, and that's often cited, well, would this case have been litigated differently, in a different form? And in this case, it's more than just kind of a conceptual, hypothetical form of prejudice. It's a real form. The decision was made in this case, and it's somewhat unconventional, to reverse merits and class certification discovery and briefing. And the reason that election was made was because both sides decided that getting a citable decision on the merits of this particular employment relationship was a paramount concern. Had the appellants moved for arbitration out of the gate, we wouldn't have flipped merits and class certification because then that decision being rendered in that form would not have the same effect. So the case really would have been litigated differently, in a different form. The third form of prejudice is the costs and the resources associated with 17 months of litigation. Now, appellants have cited on a number of occasions that costs in and of themselves are not enough to satisfy the prejudice prong, but they're certainly a relevant factor in conjunction with the other forms of prejudice that I've outlined. And after 17 months of litigation, a motion to dismiss, a scheduling conference, a Rule 26-F report, three days of depositions, there's a number of forms of costs. And, in fact, the first time that the defendants and now appellants affirm the resources that have been spent already is on May 16th through the joint stipulation to extend the certification deadlines. The parties entered into a certification stipulation as a way of sort of addressing local Rule 23 and enabling them to flip merits and certification. And they represent, along with plaintiffs, that counsel had already spent a considerable amount of time and effort analyzing how to design this case in a manner that would allow the court to address it effectively. So those are the primary forms of prejudice, and I think certainly the biggest being the second bite of the apple, but all three of them support the totality of the circumstances. I think the most recent, or perhaps one of the most recent Ninth Circuit decisions on this was the Kelly decision. And in the Kelly decision, they outline precisely this mix of prejudice to support the upholding of waiver in that instance. I think the other thing that I would bring to the Court's attention is the standard of review. And I think, obviously to de novo with respect to the law, but with respect to the months of active or inactive litigation, to borrow the appellant's invented distinction, I think that is clearly an analysis of the facts, what the nature of this time that transpired in analyzing the docket and activity that happened outside of the docket. So I would say, in that regard, their argument should be reviewed for clear error only. I think it's worth recapping with some of my remaining time, all the various times during the litigation that appellants represented their intention to seek judicial determination of this on the merits. And again, that started with, as I mentioned, the stipulation to extend certification deadlines, where the defendants represented, and this is already seven months after the complaints filed, that it's in the best interest of judicial resources that there be discovery and then an opportunity for court resolution of the legal issue. In conjunction with that, they agreed to toll the statute of limitations on FLSA opt-in claims from the date of stipulation until the court issues an order on the motion for summary judgment. So the very definition of the tolling ended at court resolution. Eight months after the complaint was filed, they filed their motion to dismiss, and we've addressed that in detail already. Thirteen months after the complaint was filed, the parties filed their joint 26-F report, in which, again, defendants affirmed their anticipation of filing summary judgment motions to the court. They affirmed that it's in the best interest of judicial resources to structure discovery in the way that the parties jointly requested. And they proposed to the court that after the court rules on the cross motions for summary judgment, the case should be certified for interlocutory review by the Ninth Circuit. Fourteen months after the complaint filed is when the case management conference happens. And in addition to the line of discussion that we've already covered with respect to the possibility of a clause construction interpretation, the court asked about settlement and whether there had been discussions for settlement. And appellant's counsel said, well, we had some early unsuccessful efforts, and now it's just a matter of bringing this to your honor for determination at summary judgment. So, again, affirming that this would be brought in court. One other point I think worth addressing is the two distinctions that have been made numerous times and are worth recirculating to the court's attention. First, of course, being a reservation of rights is different than an assertion of rights. And that observation has been made by a number of courts. You can't just, a year into the case, drop affirmative defense 15 out of 43 and think that that gives you the opportunity to play heads, I win, tails, you lose for the remainder of the case. The second, and this has also been observed by the Fifth Circuit, the Eighth Circuit, and I believe the Ninth, although I don't have the citation offhand, is that motions to dismiss are not homogenous. There's a clear distinction drawn between motions to dismiss that are procedural in nature, such as standing, and motions to dismiss that drive at the merits of the case. And the Hooper decision from the Eighth Circuit, I think, does a good job of describing that difference. Unless there's any other questions, I think I've addressed everything I need to. I just have one. In Judge Gutierrez's opinion, he describes the arbitration clause, but he doesn't say anything as to whether or not the arbitration clause had a prohibition on class arbitration. Does it or does it not? It doesn't, Your Honor, and that's what the Appellant's Counsel noted, that there isn't any explicit bilateral language. So their concern was that if they invoked arbitration at that juncture, that the plaintiffs would argue that it was permissive of class arbitration, and since there was no language to the contrary, that would have been a decision an arbitrator would have had to make. Thank you, Your Honor. Your Honor, in Rebuttal 1, the second bite at the Appell standpoint, if you adopt that to its legal conclusion or extend it to its logical conclusion, you would come to the conclusion that filing any motion to dismiss means you've waived. That's not the law in this circuit or the other. They rely on the Hooper decision in the Eighth Circuit. It does reject the idea that motions to dismiss necessarily waive, and that was a kill-shot motion where they were moving to get rid of everything and try to get rid of it once and for all. That's different than what a logical choice was made here to tee up the student-employee issue. I mean, this was no surprise. This wasn't a hidden issue, and they say we would have litigated it differently. Really? You go to an arbitrator and you're not going to tee up the same issue because you're going to avoid all the certification and the cost that would be attended on plaintiff. That's speculation, and I don't think that would have occurred in this case. Issue 2 on Hutchison. The judges basically sat there and said, I think the Martinez case may have trumped Hutchison, but this is going to have to look and see what happens on summary judgment and proof in making sure you bear your burden. He certainly did not indicate that this was going to be a dispositive merits ruling. Number 3, Judge Gutierrez, what he said at the scheduling hearing. I want you to carefully review it because they mischaracterized what Mr. Holt and the judge discussed. It was simply, the judge goes, I see you've got an arbitration. Ask Mr. Holt, are you going to do it? He goes, my clients haven't made a decision. Maybe we'll stay here, maybe we won't. The judge said, well, you need to get it done soon. You've got to move on this, or at some point you're going to be held away. He didn't indicate you already have waived. Point number 4 talks about the 3 1⁄2 months being per se prejudicial. There's no test on that at all. I would ask you to look at the Cuvado case where there was a 20-month lag, there was a motion to dismiss, a motion to certify that was opposed, and there was even some discovery against plaintiff. And the central district, using 9th Circuit authority, said no prejudice. Same thing with the Murray case where there was activity, a motion to dismiss, and guess what? Because the law was evolving like it is here, there was going to have to be other factors. The cases where there has been is where there's 2 years of delay and you're on the eve of trial. That's not our situation. Kelly, 11 months with a preliminary injunction, which we know is a many merits review, and discovery by both sides. We don't have that. Gutierrez case, 5-year delay. So there simply is no per se 3 1⁄2-month rule. Finally, in terms of cost, one, the arbitration clause provides all the arbitration and arbitrator's fees are paid by the school, so they have no prejudice. And two, cost alone is not prejudice in the 9th Circuit, but there was no proof put in front of Judge Gutierrez in terms of what that amount even was. On the standard of review, it is de novo. These facts are undisputed. There's no ambiguity in terms of the record, the docket, what was said at the conference. Unless there's any other conclusion, those are the rebuttal points I want to make. Thank you, counsel. Case is submitted. Court will stand in recess for the day. All rise.
judges: Reinhardt, Wardlaw, Bennett